**Roger SUBACZ, Plaintiff,**

v.

**TOWN TOWER MOTEL CORPORATION, Defendant.**

No. S 82–519.

United States District Court,
N.D. Indiana,
South Bend Division.

July 14, 1983.

Martin R. Sturm, Kalamazoo, Mich., for plaintiff.

Mark R. Ruppert, Lansing, Mich., R. Kent Rowe, Robert C. Douglas, Jr., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

### I.

This claim involves a cause of action arising from alleged personal injuries said to have been sustained by plaintiff while staying as a guest at defendant's motel located

in South Bend, Indiana. Plaintiff is a resident of the State of Michigan and defendant is an Ohio corporation doing business in Indiana as a foreign corporation. The alleged incident took place on August 11, 1979, and suit was brought in the United States District Court for the Western District of Michigan on August 11, 1982, exactly three years after the alleged occurrence had transpired. The applicable statute of limitations periods within which such actions must be brought is three years in the State of Michigan and two years in the State of Indiana as provided by the respective limitations statutes enacted in those states.

Defendant filed a response to plaintiff's complaint and raised as a defense the lack of in personam jurisdiction under the guidelines laid down by the Supreme Court of the United States in *International Shoe Co. v. The State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and progeny. Defendant moved to transfer to the United States District Court for the Northern District of Indiana. That court granted defendant's motion and transferred this cause but did not decide whether personal jurisdiction existed over defendant in the State of Michigan.

Defendant has moved for summary judgment on the grounds that jurisdiction over the defendant was lacking, and therefore transfer to this court was one properly accomplished under 28 U.S.C. § 1406. Because transfers under this statute mandate that the transferee court apply the law of the state where the court sits, including that state's statute of limitations period, plaintiff's claim is time-barred pursuant to Indiana Code 34–1–2–1(1).[1] Defendant's Motion for Summary Judgment was filed May 2, 1983, together with a 21 page brief. Plaintiff responded June 8, 1983 and filed brief. Both parties have filed affidavits. Hearing and oral argument was held in open court on June 20, 1983 and supplemental briefs were invited and have been filed. The supplemental brief of the defendant has been pointedly helpful.

## II.

### LACK OF PERSONAL JURISDICTION

■ In order to subject a defendant to a judgment in personam, it is incumbent upon the court to examine the relationship between the defendant and the forum and to determine whether there exist certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". *International Shoe,* supra. This "minimum contacts" test has recently been reaffirmed by the Supreme Court in discussing the interplay between the Due Process Clause of the Fourteenth Amendment and the exercise of personal jurisdiction over non-resident defendants, and it has been held that if such contacts with the forum state are lacking, then holding a defendant amenable to suit there contravenes the tenets of Due Process. *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). See also, *Doebler v. Stadium Productions Lts.,* 91 F.R.D. 211 (W.D.Mich., 1981).

Action in this case was originally brought in the United States District Court for the Western District of Michigan based upon diversity jurisdiction and as such, the court there would have been required to look first to Michigan law to determine the jurisdictional reach of the courts of that state. *Speckine v. Stanwick Intern Co., Inc.* 503 F.Supp. 1055 (W.D.Mich., S.D.1980). In Michigan, personal jurisdiction over a corporation may be either general or limited. General personal jurisdiction requires either

---

1. Even if the court found that the transfer here was pursuant to 28 U.S.C. § 1404 the court should still apply Indiana law thus barring this claim; and that even if the court applied Michigan's law, plaintiff's cause of action is time barred for failure to comply with the requirements set forth in the Michigan statute of limitations, M.C.L.A. § 600.5805.

(1) incorporation under the laws of the State of Michigan, (2) consent by the defendant to be subjected to that state's jurisdiction or (3) the carrying on of a continuous and systematic part of the corporate business within the state. It is clear that none of these factors were met here and thus the only possible basis of jurisdiction over this defendant would be under Michigan's long arm statute, M.C.L. § 600.715 which provides as follows:

> *Corporations; Limited Personal Jurisdiction.* The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Clearly, subsections (3) and (4) have no bearing here and sections (2) and (5) are also inapplicable because defendant has performed no service or done no act resulting in consequences in the State of Michigan. However, it is plaintiff's contention that sub-section (1) of this provision has been met and in support of this position cites an alleged oral agreement between defendant and plaintiff's employer to the effect that in the course of the latter's interstate trucking business, whenever any of its employees were required to stay in South Bend overnight they would be housed at defendant's motel, and defendant would agree to provide transportation for those employees from their terminal in South Bend to defendant's facility there and that billings were sent to plaintiff's employer in Michigan.

Sub-section (1) of this statute has been interpreted by that State's Supreme Court and in *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971) where it was said to have been the legislature's method of bestowing upon the courts the broadest grant of jurisdiction consistent with due process. Where a state makes such a declaration, the Long Arm Statute and the minimum contacts tests merge and the only question becomes that of due process. *Davis H. Elliott Co. Inc. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176 (6th Cir.1975).

Determining whether a defendant's affiliation with a particular state is sufficient to reach these outer limits of personal jurisdiction consistent with due process can be found by applying three criteria set out by the Sixth Circuit Court of Appeals in *Southern Machine Co. v. Mohasco Industries, Inc.* 401 F.2d 374 (6th Cir.1968). These criteria, all of which must be met, *Herman Miller, Inc. v. Mr. Rents, Inc.,* 545 F.Supp. 1241, (D.C.Mich.1982), are as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381. (footnote omitted)

The application of this tripartite test as a means of determining personal jurisdiction has been approved and followed by the

United States District Courts of Michigan and in *Herman Miller Inc. v. Mr. Rents, Inc.,* supra, it was held that employing this methodology is consistent with the Supreme Court's decisions in *Rush* and *World Wide Volkswagen.*

In *Speckine v. Stanwick Intern, Inc.,* supra, a diversity action was brought by a Michigan resident against a non-resident corporation for alleged breach of an employment contract. In that case, plaintiff mailed a resumé to defendant corporation at its offices in Arlington, Virginia and requested a job at defendant's overseas Iranian operation. One of defendant's representatives then telephoned the plaintiff to discuss this application and defendant sent an airplane ticket and an employment application to the plaintiff and advised him to report to defendant's offices in Virginia. Plaintiff in that case testified that a verbal agreement concerning the employment was made over the telephone.

Defendant moved to dismiss for lack of personal jurisdiction and plaintiff sought to uphold jurisdiction on the basis of sub-sections (1) and (2) of the aforementioned Long Arm Statute. Phrasing the issues in this case as being "whether defendant's hiring of a Michigan resident along with two or three telephone calls and the mailing of an airplane ticket to the plaintiff in Michigan permitted the exercise of jurisdiction over the defendant under the Michigan Long Arm Statute and, ultimately, whether defendant has the requisite minimum contact with the forum state," the court followed this three part test, and finding that none of those criteria were met held that personal jurisdiction over the defendant was lacking.

In explaining this test Judge Gibson noted with respect to whether or not defendant had purposefully availed itself of the privilege of acting within the forum, that to satisfy this prerequisite there must be involvement with the forum state through actions freely and intentionally done by the defendant. Stating that this requirement was consistent with the long line of Michigan cases which have interpreted sub-section (1) of the Long Arm Statute, the court followed the explanation set forth by the Supreme Court of Michigan in *Khalaf v. Bankers & Shippers Ins. Co.* 404 Mich. 134, 273 N.W.2d 811 (1978):

> A purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can properly be regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities.

503 F.Supp. at 1058.

Judge Gibson found that discussing employment opportunities over the telephone and sending a plane ticket which enabled plaintiff to travel to Virginia was insufficient to accomplish purposeful availment.

As to the remaining criterion of the three part test, the court ruled that the alleged breach of contract there occurred outside the forum and not as a result of defendant's activities within the state and that regardless, "with respect to breach of contract cases which do not involve the transaction of any business with the state, Michigan has expressed its interest only in those which require services to be performed or goods to be shipped into the State of Michigan. M.C.L.A. § 600.715(5). The Michigan Legislature has never stated that the mere contracting with a Michigan resident is sufficient to invoke the jurisdiction of the Michigan Courts." Id. at 1059. Referring to the fact that in a Due Process inquiry, it is not the relationship between the parties to the action that is important but rather the relationships among the defendant, the forum and the litigation, the court could simply find no acts or consequences with a substantial enough connection with the forum state so as to make the exercise of jurisdiction reasonable.

In a similar case, the United States District Court for the Western District of Michigan found insufficient for exercising in personam jurisdiction, the mailing of several letters into the State of Michigan along

with the placing of telephone calls there. See *Doebler v. Stadium Productions, Ltd.,* supra. That Court held that this did not constitute involvement with the state through actions freely and intentionally done and also noted that plaintiff's cause of action there did not arise from the defendant's activities within the forum. As to whether or not the defendant's contacts with the forum were substantial enough to make the exercise of jurisdiction over the defendant reasonable, Judge Gibson said:

> [Defendant's] letters and alleged phone calls were not a very substantial connection with Michigan. [Plaintiff] suggests that this case involves a contract for services covered by M.C.L.A. § 600.705(5). Where a contract is not to be performed in the forum state and was not negotiated or executed there, letters and telephone calls to the state do not supply the necessary minimal contacts to justify the exercise of personal jurisdiction. *Aaron Ferer & Sons Co. v. Atlas Scrap Iron* 558 F.2d 450 (8th Cir.1977), and cases cited therein at 455. This court has previously decided in *Speckine* that telephone conversations and a mailing did not demonstrate the substantial connection with the forum state necessary to satisfy the due process requirements for long arm jurisdiction. [Defendant's] contacts with Michigan were no more significant and cannot be found to demonstrate a substantial connection with the state.

91 F.R.D. at 215.

Other decisions by courts sitting in both Michigan and Indiana interpreting long arm jurisdiction reveal that regardless of the methodology employed in determining the presence or absence of minimum contacts, something more than placing phone calls or sending mailings into a state is required before one may be compelled to defend oneself there, particularly when the cause of action does not arise from those activities.[2] See *Replas, Inc. v. Wall,* 516 F.Supp. 59 (S.D.Ind.1980); *Zandee v. Colisto,* 505 F.Supp. 180 (W.D.Mich.1981).

In this case defendant has testified through affidavit that it is an Ohio corporation doing business in the State of Indiana. It does not now nor has it ever conducted business in the State of Michigan on either a permanent or temporary basis. It has never employed anyone to provide services of any nature within the State of Michigan, it has not shipped or caused to be shipped any goods into the State of Michigan, it has not at any time in the past owned, used, or possessed any real or tangible personal property there and it has not solicited any business in the State of Michigan at any time in the past. The only connection whatsoever this defendant had with the State of Michigan comes through plaintiff's allegations that defendant at some time made a telephone agreement with plaintiff's employer to house employees of the latter at its motel while those employees were traveling through the State of Indiana and that bills or invoices for the drivers were sent to Michigan and paid out of a Michigan bank account. Even if we assume

---

**2.** *Herman Miller, Inc. v. Mr. Rents, Inc.,* supra, —defendant advertised in the State of Michigan and sold a chair to Michigan residents which was subsequently transported into the State of Michigan and minimum contacts were held insufficient; *First National Monetary Corp. v. Chesney,* 514 F.Supp. 649 (1980)—no in personam jurisdiction existed where defendants sent payments into the state along with the mailings of an executed account agreement whose terms provided that the defendants would consent to jurisdiction in the forum; *Storie v. Beech AirCraft Corp.,* 417 F.Supp. 141 (E.D.Mich., 1976)—Where an Ohio corporation acting as a manufacturer's representative for a Michigan company made phone calls into the state and sent the president of the company there once a year it was held that the corporation's contacts were insufficient for the exercise of limited personal jurisdiction. Also see *Security Credit Acceptance Corp. v. State,* 144 Ind.App. 558, 247 N.E.2d 825 (1969) where the Appellate Court of Indiana found jurisdiction but only after it was shown that the nonresident defendant employed 45 representatives soliciting business on its behalf in the State of Indiana, entered into various contracts with residents of Indiana, forwarded various mailings into the State of Indiana, received over a three year period some $152,608.40 for its 1407 Indiana customers, remitted to them over that time period a total of $86,148.14 and where the particular cause of action there arose out of those Indiana contacts.

the existence of the contacts which plaintiff has alleged, they are far from sufficient to meet even the most liberal interpretation of the minimum contacts tests discussed above. An examination of these contacts in the light of the tripartite test which has been used in the State of Michigan substantiates this assertion.

Clearly, it cannot be said that defendant purposefully availed itself of the privilege of conducting business in Michigan. In *World-Wide Volkswagen,* the Supreme Court of the United States discussed the interrelation of purposeful availment and the reasonableness of defense in a particular forum stating:

> When a corporation "purposefully avails itself of the privilege of conducting activities within a forum state", . . . it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to the customers, or if the risks are too great, severing its connection with the State. . . .

445 U.S. at 297–298, 100 S.Ct. at 567–68.

The test for determining whether jurisdiction exists contemplates results which are foreseeable and "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there." *World-Wide Volkswagen Corp. v. Woodson, supra.*

Here there was no deliberate undertaking to do or cause an act or thing to be done in Michigan nor was there conduct which could be regarded as the prime generating cause of the effects resulting in Michigan. *Khalaf v. Bankers & Shippers Ins. Co.* supra. Defendant did not sell or transport goods into Michigan nor did it perform services, solicit business, or advertise there. There was no "involvement with the forum state on the part of defendant through actions freely and intentionally done . . ." *Speckine v. Stanwick Intern, Inc.* Even if

plaintiff's contentions concerning defendant's involvement in Michigan are accepted as true, this activity is at most something akin to "a passive availment of Michigan opportunities" *Khalaf v. Bankers & Shippers Ins. Co.,* which is simply insufficient to meet even the purposeful availment requirements, *Id.*

Further, the second element of the Sixth Circuit's test provides that before personal jurisdiction can be evoked where general jurisdiction is not present it is necessary that the cause of action arise from the defendant's activities within the forum state. Even the Michigan Long Arm statute itself is in accord with this prerequisite. Thus, as it is noted in the committee comments to that statute:

> If a corporation's contacts within the state are not continuous and systematic, jurisdiction may still be exercised on the basis of specified transactions or occurrences within the state but such jurisdiction is limited to claims arising out of the particular transaction or occurrence within the state which supplies the basis of jurisdiction.

See M.C.L.A. § 600.715—Committee Comments.

This is consistent with the mandate set down by the Supreme Court of the United States that the critical determination in cases such as this is the relationship between the defendant, the forum state and the litigation. See *Rush v. Savchuk, supra.* Yet here all of plaintiff's alleged injuries occurred in Indiana and any claim he has against defendant arose there. Plaintiff has sued to recover damages for these injuries. His claim has nothing whatsoever to do with any contract or agreement defendant may have had with plaintiff's employer. Plaintiff in essence is asking the court to find that the State of Michigan could have entertained general personal jurisdiction over the defendant and that requires a much more significant relationship with the forum than what exists here. Neither the uncontested affidavit testimony submitted

by defendant nor the alleged facts as proposed by plaintiff as to defendant's involvement with the State of Michigan would authorize such a result.

█ Due Process requires that the acts of the defendant have a sufficiently substantial connection with the forum to make the exercise of jurisdiction reasonable. One factor bearing upon this reasonableness concerns whether any unfair surprise on the part of the defendant would result from the exercise of jurisdiction. *In-Flight Devices Corp. v. VanDusen Air, Inc.,* 466 F.2d 220 (6th Cir.1972). This, of course, is related to the requirement of foreseeability stated in *World Wide Volkswagen* and noted above. *Speckine* held that telephone conversations and a mailing did not demonstrate the substantial connection with the forum state so as to make the exercise of jurisdiction over the defendant reasonable. In this instance, even if we assume the allegations of plaintiff are correct, it simply cannot be said that defendant had such a connection with that state that he should reasonably anticipate being haled into court there, *World-Wide Volkswagen Corp. v. Woodson,* particularly on a cause of action having nothing whatsoever to do with the minimal contact defendant had with the forum.

Plaintiff contends that *Kiefer v. May,* 46 Mich.App. 566, 208 N.W.2d 539 (1973) is dispositive of this issue and supportive of his contention that jurisdiction over defendant exists here. There, a Michigan resident purchased an automobile from a non-resident seller and then initiated a lawsuit when it was discovered that the automobile was missing parts and was not as it had been represented to be. In that case however, not only did defendant place an advertisement in a magazine circulated in Michigan, discuss the matter with plaintiff and

make representations to him over the telephone, accept a check sent from Michigan for the purchase price of the car, and ship the vehicle into the State of Michigan; but in addition, plaintiff's cause of action there arose out of those very contacts which the defendant had had with the forum. In fact, the court in *Kiefer* made specific note of this when it referred to a Michigan Supreme Court decision interpreting that state's long arm statute:

> The statute uses the phrase "The transaction of *any* business within the state". When we keep in mind that we are dealing not with *general* jurisdiction which is provided for in another part of the statute ... which would expose a non-resident to suit in Michigan for any cause wherever it arose, but rather with *limited* jurisdiction which exposes a non-resident to suit in Michigan only for a cause which arose out of the relationship serving as a basis for such jurisdiction we see no federal constitutional question. (Emphasis provided by the Court).

*Id.,* 208 N.W.2d at 541.

Thus in cases such as *Kiefer v. May,* and *Valdez v. Ford, Bacon & Davis, Texas, Inc.,* 62 F.R.D. 7, 13, (1974) where this court noted that "when a manufacturer, or other seller, sends an article into the state for his economic gain, it does not seem unjust to expect him to answer there for the consequences" [3], it is easy to see that the tests referred to above for minimum contacts and due process are satisfied. However where the cause of action has no connection with a defendant's activities in the forum and where those activities themselves are minimal, then it is also easy to see that exercising jurisdiction over the defendant is not appropriate. As was also pointed out in *Valdez, supra,* "where a manufacturer has

---

**3.** The *Valdez* court also referred to situations involving breach of contract where the contract formed the basis of jurisdiction and it was pointed out that in the committee comments to Indiana Trial Rule 4.4 it is said that: "since a breach of contract, unlike most tortious conduct, is usually manifested by a failure to act, it

is more difficult to say that a meaningful act occurred in any particular place. In view of the greater interest on the part of the state in the performance of the contract, jurisdiction on contracts not 'made' in the state should be based on at least some part of the agreement to be performed there."

no reason to anticipate that his product would move into another state, the exercise of jurisdiction is a violation of the due process clause." *Id.* at p. 11.

■ It is clear that the minimal contacts defendant had here with the State of Michigan, all of which had nothing whatsoever to do with plaintiff's cause of action, could not form the basis for a court in Michigan to entertain in personam jurisdiction over it. As such, this court should apply Indiana law to this case and thus plaintiff's claim should be dismissed as being untimely.

## II B.

### TRANSFER

■ Where venue is improper in the transferor court, the transferee court must apply the statute of limitations which would have been applied had the case originally commenced in the transferee court. *Translinear, Inc. v. Republic of Haiti,* 538 F.Supp. 141 (D.D.C.1982). A corollary to the above is that an improper transfer renders the transferee court without subject matter jurisdiction over the claim. *Kotsonis v. Superior Motor Express,* 539 F.Supp. 642 (D.N.C.1982).

■ Notwithstanding the above, a critical preliminary issue is the nature of the transfer: if the action is transferred pursuant to statute "for the convenience of parties and witnesses," state law of the transferor court should be applied; however, if the transfer is pursuant to statute governing transfers of actions "laying venue in the wrong division or district," the state law of the transferee court should be applied. *Martin v. Stokes,* 623 F.2d 469 (6th Cir. 1980).

In an excellent analysis of the law of transfer under § 1404(a), the Court of Appeals for the Eleventh Circuit declared that the holding of *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), did *not* apply to situations where the transferor court lacked, or at best only had questionable, jurisdiction over the parties. *Roofing & Sheet Metal Serv. v. LaQuinta Motor Inns,* 689 F.2d 982 (11th Cir.1982). Otherwise,

> plaintiffs would be encouraged to engage in impermissible forum shopping; a plaintiff could sue in a forum lacking personal jurisdiction, "for the purpose of capturing the law of that jurisdiction for transportation to the jurisdiction in which service can be obtained." [citations omitted] Such abuses by plaintiffs would be precisely the type that *Van Dusen* sought to prevent on the part of defendants. A rule allowing them would defeat the goal of uniformity articulated in *Erie* and elaborated in *Van Dusen,* by producing different outcomes, depending on whether the action is initially brought in state or federal court.

689 F.2d at 992.

A caveat to the above is the following: Transfer under Section 1404(a) is possible only if venue is proper in the original forum and federal jurisdiction existed there. If subject matter jurisdiction is lacking, there is no power to do anything with the case except dismiss. If venue is improper, transfer, if at all, must be under Section 1406(a). But a court that has subject matter jurisdiction and that is a proper venue may transfer under Section 1404(a) *even though it lacks jurisdiction of the person of the defendant.* (emphasis added).

15 Wright, Miller & Cooper, Federal Practice and Procedure § 3846 at 231 (transferee courts ordinarily will not and cannot review a transfer order, but they will do so where it is contended that the transferor court lacked power to order the transfer). For a recent application of these ideas see *In Re Crager Industries, Inc.,* 706 F.2d 503 (5th Cir.1983).

It has also been held that a transferee court must apply the choice of law rules of the state where it sits following a Section 1404(a) transfer *from a district in which*

personal jurisdiction over the defendant could not be obtained. *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099 (5th Cir.1981).

█ In this case the district court in the Western District of Michigan made *no* determination as to personal jurisdiction over this defendant. This court can and should make such a determination here and can do so without violating any of the values set out in *Crager.* That court simply had no personal jurisdiction under Michigan law.

## III.

## INDIANA JOURNEY ACCOUNT STATUTE INAPPLICABLE

█ During oral argument in this matter it was suggested that the Indiana Journey Account statute, IC 34–1–2–8 may be applicable here to save plaintiff from the bar of Indiana's statute of limitations. This statute reads:

> If, after the commencement of an action, the plaintiff fails therein, from any cause except negligence in the prosecution, or the action abate, or be defeated by the death of a party, or judgment be arrested or reversed on appeal, a new action may be brought within five years after such determination, and be deemed a continuation of the first, for the purposes herein contemplated.

The history and rationale of this statute was articulated in *Pennsylvania Co. v. Good,* 56 Ind.App. 562, 566, 103 N.E. 672, 673 (1913), as follows:

> * * * At common law, suits frequently failed of a decision on their merits on account of some matter of form. In such cases the plaintiff was permitted, within a reasonable time, to sue out a new writ, and such renewal suit was deemed a continuation of the first. The time which was reasonable for such purpose was computed theoretically with reference to the number of days required for plaintiff to journey to the place where the court was held, and hence the name "Journeys

Account". (citations omitted). This ancient remedy is not now recognized in this country, but, in lieu thereof, statutes have been passed in nearly all of the states, providing for a renewal of actions which have failed on account of some matter not involving the merits. These statutes do not contemplate a renewal or continuance of the former suit as at common law under Journeys Account, but that a new and distinct suit shall be commenced, which shall be treated as a continuation of such former suit.

Any discussion concerning this statute may be premature at this stage of the proceedings. The Journey Account statute deals with new causes of action brought within five years after the dismissal or abatement, etc. of an original suit. There has been no such dismissal or abatement here, nor has there been a "new and distinct suit ... commenced," *Pennsylvania v. Good,* in this matter and thus the prospective determination of what a court would do should plaintiff's case be dismissed and refiled at a later time is premature and akin to the inappropriate rendering of an advisory opinion.

Even if the court were to consider prospectively the applicability of this statute, it is clear that plaintiff here has not met the necessary prerequisites to enable him to come within the bounds of its protections.

As it was noted in *Ware v. Waterman,* 146 Ind.App. 237, 253 N.E.2d 708 (1969):

> In order for the Journeys Account statute ... to be applicable it is necessary that an action must have been commenced timely and must have failed, abated or been defeated as specifically prescribed in said Act. . . .

That case involved a complaint for personal injuries which occurred on March 11, 1964. Suit was filed in November of 1965 within the applicable two year limitations period in Indiana for such causes of action, however at the time suit was initiated the defendant, unbeknownst to plaintiff, had

died. On April 13, 1966, the decedent's administrator was substituted and this was within the eighteen month period of limitations for the filing of such actions. In May of 1967, defendant filed a plea in abatement which was sustained and on June 1, 1967, another action was filed against the special administrator. Noting that the applicable statute of limitations period to be complied with in that case was the eighteen month period within which a suit against a decedent's administrator must have been brought the court found that an action was timely commenced against the administrator on April 13, 1966, and since the new action was brought within five years after the original one abated, the Journey Account statute was applicable.

In *Martin v. Levinson,* Ind.App., 409 N.E.2d 1239 (1980), plaintiff brought action on July 15, 1976, as a result of an accident which occurred on December 1, 1974. At the time this suit was initiated the defendant had been dead for fourteen and one-half months. Plaintiff attempted to refile his action after the applicable limitations period for naming an administrator to defend had expired and the court dismissed the case because the *applicable* limitations period had not been met. Noting that the critical language in the Journey Account statute was that portion requiring that an action be *commenced,* the court found that no action was formally commenced until the applicable limitations period had been met. There, the complaint filed on July 15, 1976 failed because of defendant's death and thus no action was commenced at that time. When plaintiff failed to substitute the administrator within the allowed time period his claim was barred and could not be resurrected by the journey account statute.

"This infirmity" said the court, "distinguishes *Ware v. Waterman, supra,* from the instant case since there the administrator for the estate was substituted as a party defendant within the 18 month period." Id. at 1245.

The importance of complying with the applicable statute of limitations period was also highlighted in *Abele v. A.L. Dougherty Overseas, Inc.,* 192 F.Supp. 955, 957 (N.D. Ind.1961), where Judge Swygert speaking for this court said:

> This statute is designed to insure to the *diligent* suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives *timely notice* to his adversary of a present purpose to maintain his rights before the courts. (citations omitted, emphasis added).

Hence in *Abele* where the plaintiff's original action against defendant was brought in the State of Ohio and dismissed within several months prior to the running of the applicable Indiana limitations period, the court found that the plaintiff there should be protected because his original action had been brought within the time such actions were required to have been brought under *Indiana* law. He had *diligently* prosecuted his claim and had given his adversary *timely notice* thereof. Hence when defendant there argued that the filing of suit in another state would not suffice to bring the plaintiff within the protections of the Indiana statute, the court noted that even though that position was supported by a number of decisions from sister states, it would produce an incongruous result in that case and was unacceptable:

> . . . had [plaintiff] filed his first action in Indiana he would . . . have been permitted to institute the present action. Yet, if we were to follow defendant's cases, by crossing the state line plaintiff would lose [this protection].

Id. at 957.

In this case, plaintiff waited until the final day of the running of the *Michigan* statute of limitations before filing suit and at that time he had long surpassed the applicable Indiana limitations period. Certainly it cannot be said that plaintiff was a *diligent* suitor giving *timely notice* to his

adversary, and it cannot be said that such a plaintiff should be saved by filing within the time period allotted in a limitations period having no applicability to the particular matter at hand. If an action is barred by the Indiana statute of limitations it cannot be maintained in this State even though the action is not barred elsewhere—the commencement of an action in one state does not toll the running of limitations against an action for the same cause of action and between the same parties in another state. To hold otherwise would permit forum shopping of the grossest kind as it would allow the non-diligent suitor to scour the country for a favorable limitations statute when the appropriate period had expired and then circumvent this defense by raising the protections of a Journey Account statute.

While a number of cases have expressed the view that where the original action was dismissed on the ground that the court lacked personal jurisdiction over the defendant, the savings statute does not apply (see annotation 6 ALR 3rd 1043, § 4C at pg. 1053), this issue need not even be addressed here because plaintiff's original claim was untimely under Indiana law and as such, cannot form the basis of a claim invoking the Indiana Journey Account statute.[4]

The Supreme Court of the United States in *Chase Securities Corp. v. Donaldson,* 325 U.S. 304 at 314, 65 S.C. 1137 at 1142, 89 L.Ed. 1628 (1945) stated with respect to the statutes of limitations:

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. (citations omitted). They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right for what used to be called a "natural" right of the individual.

There is no exception in Indiana's Journey Account statute for plaintiffs who have just cause for filing beyond the limitations period. It is a requirement of the act, that the applicable statute of limitations period be complied with. Otherwise, statutes of limitations themselves could be rendered meaningless.

For the above reasons it is clear that the Journey Account statute has no applicability here.

### JUDGMENT

The defendant's Motion for Summary Judgment is GRANTED and costs are assessed against the plaintiff in favor of the defendant. Judgment shall enter accordingly.

---

4. Thus where plaintiff's state court personal injury action non-resident defendant was dismissed for lack of personal jurisdiction over defendant and was negatory and without legal effect, there was nothing for "saving statute" to save at the time the action was subsequently filed in the Federal Court; consequently, the federal action which was filed after the expiration of the period of limitations was barred.

*Osman v. Draskovich,* 314 F.Supp. 1115 (E.D. Wis.1970). See also *Lillibridge v. Riley,* 316 F.2d 232 (5th Cir.1963) where the Fifth Circuit Court of Appeals noted that in order for the Georgia Renewal statute to prevent the operation of the statute of limitations the first suit must have been one in which the court had jurisdiction of the parties and of the subject matter.