**POLLUTION CONTROL INDUSTRIES OF AMERICA, INC., Plaintiff,**

v.

**Linda R. VAN GUNDY, Jack J. Genova, and Michael J. Genova, Defendants.**

No. H90–086.

United States District Court, N.D. Indiana, Hammond Division.

March 14, 1991.

Nathaniel Ruff, Lesniak & Ruff, East Chicago, Ind., for plaintiff.

Randall J. Nye, Beckman, Kelly & Smith, Hammond, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

LOZANO, District Judge.

This matter is before the court on the Motion to Dismiss, filed by the defendants, Linda R. Van Gundy, Jack J. Genova, and Michael J. Genova, on May 4, 1990. The defendants base their motion on Rule 12(b)(2) of the Federal Rules of Civil Procedure, and contend that the plaintiff, Pollution Control Industries of America, Inc.'s

1. Based on this ruling, the defendants' Motion for Summary Judgment, filed January 29, 1991, is SUMMARILY DENIED WITHOUT PREJUDICE. The defendants may refile this motion in

(hereinafter referred to as "P.C.I.A.") Complaint does not allege facts sufficient for this court to exercise personal jurisdiction over the defendants. For the reasons set forth herein, the defendants' Motion to Dismiss is GRANTED.[1]

## DISCUSSION

"A federal district court sitting in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which the district court sits would have personal jurisdiction." *Daniel J. Hartwig Associates, Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir.1990) (citations omitted). The inquiry into whether an Indiana court would have jurisdiction over these defendants has two parts. First, the court must determine whether the Indiana long-arm statute subjects the defendants to *in personam* jurisdiction. *Id.* (citations omitted). If the answer to this question is yes, then the court must determine "whether the exercise of jurisdiction under the long-arm statute runs afoul of the due process requirements of the fourteenth amendment." *Id.* (citations omitted).

Indiana's long-arm statute provides, in relevant part, that:

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or ser-

the appropriate court if P.C.I.A. chooses to refile this cause of action in a manner consistent with this opinion.

vices used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state;

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made; or

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state.

IND.CODE ANN., Title 34, Appendix Court Rules, Rule 4.4, Indiana Rules of Trial Procedure (West 1988). Whether a state or federal court sitting in Indiana may exercise personal jurisdiction over a nonresident defendant depends upon either the defendant's general contacts with the forum state or the defendant's specific contacts. *Wallace v. Herron*, 778 F.2d 391, 393 (7th Cir.1985).

Where a defendant has sufficient, continuous, and systematic general contacts with a particular forum state, the courts within that state may exercise *in personam* jurisdiction over that defendant for any action, even if that action "does not arise out of or relate to the [defendant's] activities in the forum [s]tate." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). Conversely, where a defendant's contacts with a state are insufficient to support general jurisdiction, Indiana state and federal courts may assert specific *in personam* jurisdiction over a nonresident defendant only if the controversy "is related to or 'arises out of' [the] defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414, 104 S.Ct. at 1872 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). In

sum, the defendants' "conduct and connection with Indiana must be such that [it] should reasonably anticipate being subject to the jurisdiction of an Indiana court." *Wallace*, 778 F.2d at 393–94 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

The burden of establishing jurisdiction is on the plaintiff. *Doebler v. Stadium Productions Ltd.*, 91 F.R.D. 211, 213 (W.D.Mich.1981). When, as here, the issue is to be determined solely on the basis of written materials, the plaintiff "need only present a *prima facie* case, and the pleadings and affidavits must be considered in the light most favorable to the party asserting the existence of jurisdiction." *Id.* (citing *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)).

Taking all facts alleged in the Complaint as true, P.C.I.A. has failed to demonstrate that this court has sufficient grounds to exercise personal jurisdiction over the defendants in this action. To establish jurisdiction, P.C.I.A. alleges only that this action involves the breach of a contract for the sale of real property in Kansas City, Kansas; that the amount in controversy exceeds $50,000.00; that P.C.I.A. is a Missouri corporation with its principal place of business in East Chicago, Indiana; and that the defendants are residents of Kansas. (See Complaint, filed March 12, 1990, ¶¶ 1–3.). P.C.I.A. failed to allege that the defendants conducted any business in Indiana, or that the defendants committed any of the other acts which would confer this court or any Indiana court with personal jurisdiction over the defendants under the Indiana long-arm statute. Indiana Trial Rule 4.4, *supra*.

By their Motion to Dismiss, the defendants contend that they are residents of Kansas and Missouri and have not had sufficient contacts with Indiana for this court to require them to defend this cause of action in Indiana. In support of their motion, each defendant submitted an affidavit. By her affidavit, Linda R. Van Gundy affirms that she is a resident and citizen

of Kansas and has never been a resident or citizen of Indiana. (See Affidavit of Linda R. Van Gundy (hereinafter referred to as "Van Gundy Affidavit"), dated May 3, 1990, ¶¶ 2–3.). Van Gundy also affirms that she has visited Indiana on two occasions, most recently four (4) years ago, when she accompanied her late husband, Jack Van Gundy, "on a trip related to his business affairs." *Id.* Van Gundy affirms, however, that she has never come to Indiana in connection with her own business affairs or the real estate transaction which is the basis for P.C.I.A.'s Complaint. *Id.*

It does not appear from Van Gundy's affidavit that she has had sufficient, continuous, and systematic general contacts with Indiana for the federal and state courts of Indiana to exercise jurisdiction over her in an action which does not arise out of or relate to her activities in Indiana. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414–16, 104 S.Ct. at 1872–73. For instance, Van Gundy affirms that she has never had an office or done business in Indiana, nor has she employed an agent or employee who was a resident of or stationed in Indiana. (See Van Gundy Affidavit at ¶ 4.). Van Gundy also affirms that she has never owned any bank account, financial account, brokerage account, personal property, real property, or any interest in real property in Indiana, nor has she ever pursued any claim in the Indiana courts. *Id.* at ¶¶ 5–7.

The record contains no evidence which suggests that this cause of action arises out of or is related to any special contacts Linda Van Gundy may have had with Indiana. In this regard, Linda Van Gundy affirms that the real property which is the subject matter of the contract allegedly breached is located at 45 Ewing Street, Kansas City, Kansas. (See Van Gundy Affidavit at ¶ 9). This fact is also pled as part of the Complaint filed March 12, 1990, and appears in the papers attached to the Complaint as evidence of the agreement between the parties for the sale of this real property. (See Van Gundy Affidavit at ¶ 9; Complaint, filed March 12, 1990, ¶ 5; and

Exhibits B through F, which are attached to the Complaint.).

P.C.I.A. was not a party to the Agreement for Sale and Purchase of Real Estate dated February 6, 1987, nor was P.C.I.A. a party to the Promissory Note, both of which are attached to the Complaint filed March 12, 1990, as Exhibit A. The Agreement for the Purchase and Sale of Real Estate was signed by the "seller," Mildred L. Genova, as the President of Ewing Investments, Inc.; attested by Michael Genova, as the Secretary of Ewing Investments, Inc.; and signed by Jack Van Gundy and Kevin Prunsky, as "buyers." The Promissory Note demonstrates Jack Van Gundy's and Kevin Prunsky's promise to pay the purchase price of 45 Ewing St. to Ewing Investments, Inc., but does not mention P.C.I.A. These documents appear to embody an agreement between Mildred L. Genova and Michael Genova on behalf of Ewing Investments, Inc., and Jack Van Gundy and Kevin Prunsky, but contain no provision for the removal of P.C.B. contamination from 45 Ewing St. and make no mention of P.C.I.A. P.C.I.A. has therefore not only failed to demonstrate its rights under a contract to which it is not a party, but has also failed to demonstrate the relevance of these documents to its claim.

P.C.I.A. alleges that Linda Van Gundy, Michael J. Genova, and Jack J. Genova, are the "sellers" of the subject real estate, presumably because they each signed the document entitled "Closing Instructions" as "sellers." (See Exhibit B, attached to the Complaint, filed March 12, 1990.). The document entitled "Closing Instructions" does not mention P.C.I.A., nor is it signed by a representative of P.C.I.A. The purpose of Exhibit F is also unclear. Exhibit F is an affidavit of real estate by which Linda Van Gundy, her husband, Jack Van Gundy, Michael J. Genova, and Jack J. Genova, affirm that, as of December 12, 1990, they are the owners of Lots 40, 42, 44, 46, 48, and 50 on Ewing St. in Wyandotte County, Kansas. While this is a formal description of the real property referred to in this lawsuit as "45 Ewing St.," this document makes no reference to P.C.I.A. or the removal of P.C.B. contamination.

Exhibits C, D, and E appear to pertain to the agreement between P.C.I.A. and the defendants. Exhibit C is a Promissory Note executed by the President of P.C.I.A., who has signed this document with an "X", by which P.C.I.A. promises to pay the defendants the purchase price of 45 Ewing St. Exhibit D is a Guaranty by which Jack Van Gundy and Kevin Prunsky, who signed with an "X", guarantee that P.C.I.A. will pay the purchase price of 45 Ewing St. to the defendants. Exhibit E is a Kansas mortgage form which is incomplete, not dated, unsigned, and not notarized but which does bear the typewritten names of the parties. Clearly, Exhibit E has no evidentiary value whatsoever. (See Exhibits C, D, and E, attached to the Complaint, filed March 12, 1990.). None of these documents contains a provision for the removal of P.C.B. contamination from 45 Ewing St.

Linda Van Gundy appears to have been one of the sellers of 45 Ewing Street when that real property was sold to P.C.I.A., not because she was a party to the contract of sale dated February 6, 1987, but because she signed the document entitled "Closing Instructions," which is attached to the Complaint filed March 12, 1990, as Exhibit B. In this regard, Linda Van Gundy affirms that this real property was never advertised for sale in Indiana, nor was it listed with any Indiana real estate broker or agent. (See Van Gundy Affidavit at ¶ 10). Linda Van Gundy further affirms that the contract for the sale of this real property was neither solicited, negotiated, nor executed in Indiana; that this contract was negotiated, prepared, and signed in Kansas City, Kansas, as were all documents to the transaction; and that none of the defendants nor any agent or employee of the defendants went to Indiana in connection with any aspect of the transaction. (See Van Gundy Affidavit at ¶¶ 8, 11.). Thus, it does not appear from the factual allegations in the Complaint, the exhibits attached to the Complaint, or Linda Van Gundy's affidavit that this cause of action, which alleges a breach of contract for the sale of real estate, arises out of or

is related to Linda Van Gundy's contacts with the State of Indiana.

The same may be said for the defendants, Jack J. Genova and Michael J. Genova. Jack J. Genova executed an affidavit which is virtually identical to Linda Van Gundy's, with two differences: Jack J. Genova makes no mention of *ever* entering Indiana, and his affirmed residence address is different from Van Gundy's. (See Affidavit of Jack J. Genova, dated April 24, 1990.). Michael J. Genova also executed an affidavit which is virtually identical to Linda Van Gundy's, with two differences: he affirms that he is a resident and citizen of Missouri and has only been in Indiana once, on a trip to visit friends in Indianapolis, Indiana, which was unrelated to business. (See Affidavit of Michael J. Genova, dated May 3, 1990.). Therefore, it does not appear from the Complaint, the exhibits attached to the Complaint, or the affidavits of Jack Genova or Michael Genova that this court has sufficient grounds to exercise personal jurisdiction over either of the defendants, Jack J. Genova or Michael J. Genova.

■ P.C.I.A. opposes the defendants' Motion to Dismiss, but admits that it has failed to allege facts "which show a basis for personal jurisdiction over the defendants." (See Plaintiff's Response and Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (hereinafter referred to as "P.C.I.A.'s Response"), filed June 21, 1990, p. 2, ¶ 2.). P.C.I.A. has requested, in the event that this court finds that the Complaint filed March 12, 1990, fails to allege sufficient grounds upon which this court may properly exercise personal jurisdiction over the defendants, that this court grant P.C.I.A. leave to file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides, in relevant part, that:

[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not yet been placed upon the trial

calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added). In light of the district court policy to decide cases "on the basis of the substantive rights involved, rather than on technicalities[,]" *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 610 (7th Cir.1987) (citation omitted), a plaintiff should be given every opportunity to cure a defect in his pleading, unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985).

■ This court must review the proposed amendment to determine whether it will cure the jurisdictional defect before allowing P.C.I.A. to file an amended complaint. "While our guiding principle is that leave to amend normally should be freely given, this principle is inapplicable where the amendment would prove futile." *Williams v. United States Postal Service*, 873 F.2d 1069, 1072 (7th Cir.1989) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Sarfaty v. Nowak*, 369 F.2d 256, 259 (7th Cir.1966), *cert. denied*, 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 627 (1967)). "When an amendment will not cure the legal deficiencies of the original complaint, the district court does not abuse its discretion by refusing to grant leave to amend." *Id.* (citing *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1391 (7th Cir. 1983); *Jafree v. Barber*, 689 F.2d 640, 644 (7th Cir.1982)). "Failure to remedy the jurisdictional defects of a complaint is one example of where an amendment would prove futile." *Id.* (citing *Textor*, 711 F.2d at 1391).

P.C.I.A. seeks to establish by an amended complaint that this court has jurisdiction over the defendants pursuant to Indiana Trial Rule 4.4(A)(1), which subjects a defendant to the long-arm jurisdiction of an Indiana court or a federal court sitting in Indiana for doing or having done business in Indiana. In support of this assertion, P.C.I.A. seeks to rely on the agreement it entered into with the defendants to purchase the real property located at 45 Ewing Street, Kansas City, Kansas. As proof of this agreement and as support for its assertion that this court may properly exercise personal jurisdiction over the defendants, P.C.I.A. has submitted an unexecuted, incomplete, undated copy of a Kansas Real Estate Mortgage, but has not alleged that any part of this agreement was solicited, negotiated, drafted, or signed in Indiana. At the time of the agreement which is the basis of this lawsuit, P.C.I.A. was a Missouri corporation with its principal place of business in Kansas City, Kansas, and all parties were residents of either Kansas or Missouri. (See P.C.I.A.'s Response, p. 4, ¶ 1.).

P.C.I.A. claims that "[a]s a term of that contract, the [d]efendants agreed to remove all PCB contamination from the building[,]" and that "[t]he [d]efendants failed to complete this provision of the contract." *Id.* However, upon careful review of all of the documents filed as exhibits attached to the Complaint filed March 12, 1990, and of P.C.I.A.'s Response, this court finds no evidence whatsoever that this provision was committed to writing at the time the agreement was executed.

P.C.I.A. has not alleged that the agreement for the removal of P.C.B. contamination from 45 Ewing St. was an oral modification of a written contract, nor has P.C.I.A. alleged facts from which the precise time of this alleged agreement to remove P.C.B.s can be determined. The breach of the alleged agreement to remove P.C.B. contamination from 45 Ewing St. appears to have occurred before P.C.I.A. moved its principal place of business from Kansas City, Kansas, to East Chicago, Indiana. (See P.C.I.A.'s Response at p. 4, ¶ 1.). Thus, the breach which is the basis of this lawsuit also appears to have occurred while all parties were residents of either Kansas or Missouri.

P.C.I.A. bases its assertion that this court has personal jurisdiction over the defendants on the fact that after P.C.I.A. moved to Indiana, P.C.I.A. tried to obtain the defendants' completion of the removal of P.C.B. contamination from 45 Ewing St. In this regard, P.C.I.A. claims to have placed a number of phone calls to Jack Van Gundy, who is now deceased, and to Kevin Prunsky, neither of whom was ever a party to this lawsuit. P.C.I.A. also claims that Jack Van Gundy made two trips to Indiana to discuss this cleanup, and that when the defendant, Jack Genova, began coordinating cleanup efforts, that "there were numerous calls made between Genova in Kansas City to East Chicago, Indiana, as well as frequent mailings from Genova in Kansas City to P.C.I.A. in East Chicago[,]" and that "[t]his string of contacts continued for a year and a half." (See P.C.I.A.'s Response at pp. 4–5.).

Rather than provide this court with an adequate basis to exercise personal jurisdiction over the defendants in this case, P.C.I.A. has demonstrated that pursuant to the Indiana long-arm statute and the fourteenth amendment to the United States Constitution, there are insufficient grounds for this court to exercise personal jurisdiction over the defendants. First, P.C.I.A. has made no showing that any of the defendants had sufficient, continuous, and systematic general contacts with Indiana. Thus, this court can only exercise personal jurisdiction over the defendants if this lawsuit arises out of or is related to their activities in Indiana. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414–16, 104 S.Ct. at 1872–73.

P.C.I.A. has failed to demonstrate that the controversy at the center of this lawsuit is related to or arises out of the defendants' contacts with Indiana. The real property is located in Kansas, and the agreement between the parties for the purchase and sale of this real estate was executed in Kansas. The defendants were at that time, and still are, residents and citizens of Kansas and Missouri, and the plaintiff was at that time a Missouri corporation with its principal place of business in Kansas. Furthermore, the alleged breach of the alleged agreement to remove P.C.B. contamination appears to have occurred before P.C.I.A. moved its principal place of business to Indiana.

Given these circumstances, the defendants could not reasonably ·have foreseen being required to litigate this matter in Indiana, since there is no evidence that any of them ever did any business in Indiana or committed any of the other acts which would give this court or any Indiana court long-arm jurisdiction over them. The question is not whether the plaintiff, P.C.I.A., was transacting business in Indiana, but whether the *defendants* were transacting business in Indiana. *Asset Allocation & Mgt. v. Western Employers Ins.,* 892 F.2d 566, 569 (7th Cir.1990) (emphasis added). Here, the record contains no evidence that any of the defendants ever conducted business in Indiana. Indeed, the plaintiff admits that the support for exercising personal jurisdiction is limited to the defendants' contacts with P.C.I.A. in Indiana.

■ The fact that the defendants maintained contact with P.C.I.A. after P.C.I.A. moved its principal place of business to Indiana does not establish sufficient minimum contacts between the defendants and Indiana for this court to exercise personal jurisdiction over these defendants. P.C.I.A. has sole control over the location to which it moves its principal place of business. P.C.I.A. moved its principal place of business after transacting the agreement with the defendants in Kansas, after the defendants allegedly breached the agreement in Kansas, and after the parties had allegedly begun negotiating and coordinating efforts to remove the P.C.B. contamination. Clearly, such unilateral activity on the part of the plaintiff is not an appropriate basis for this court to exercise personal jurisdiction over nonresident, nonconsenting defendants. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 417–18, 104 S.Ct. at 1873 (citing *Kulko v. California Superior Court,* 436 U.S. 84, 93, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (it is arbitrary to subject one parent to suit in any State where the other parent chooses to spend time while having custody of a

child pursuant to a separation agreement); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Additionally, considering the lack of evidence that the defendants have taken any other action to avail themselves of the benefits of doing business in Indiana, and the fact that the agreement allegedly breached is subject to Kansas law and involves real property located in Kansas, the interests of justice would seem to require that this cause of action be tried in a state or federal court in Kansas. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989) ("[t]he 'interest[s] of justice' include such concerns as ... having a judge who is familiar with the applicable law try the case[.]'").

■ P.C.I.A. has requested, in the event that this court finds a lack of sufficient grounds upon which to exercise personal jurisdiction over the defendants, that this court transfer this cause of action to the appropriate United States district court in Kansas. "Section 1404(a) provides that '[for] the convenience of parties and witnesses, in the interest[s] of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d at 1293 (quoting 28 U.S.C. § 1404(a)). "District courts have broad discretion to grant or deny a motion to transfer under § 1404(a), and will not be reversed absent a clear abuse of discretion." *Id.* (citing *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir.1986); *Federal Deposit Insurance Co. v. Citizens Bank and Trust Co.*, 592 F.2d 364, 368 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979)). This court has found that the Complaint fails to allege sufficient grounds for this court to exercise personal jurisdiction over the defendants, that several documents which purport to demonstrate the agreement between the parties are insufficient or irrelevant, and that the proposed amendment to the Complaint is futile. Therefore, in its discretion, this court will not transfer this cause of action in its present posture.

Based on the foregoing, this court finds that there is no factual basis in the Complaint which authorizes this court to exercise personal jurisdiction over the defendants, and no basis upon which to allow P.C.I.A. to file an amended complaint. Accordingly, the defendants' Motion to Dismiss is GRANTED, and the Complaint is DISMISSED WITHOUT PREJUDICE. The plaintiff, P.C.I.A., may refile this action with an amended complaint in the appropriate Kansas state or federal court.